WILLIAM H. WATERS, PLAINTIFF IN ERROR, V. ADOLPH
REUBER, DEFENDANT IN ERROR.

1. **Replevin:** PRACTICE. The affidavit and bill of particulars in
an action of replevin before a county judge described the prop-
erty as " one frame building now in process of erection, size 22 x
50, with the appurtenances thereto belonging, and of the value
of $350." On the case being certified to the district court, the
plaintiff in the action filed his petition, in which the property is
described as " all the lumber, lath, shingles, nails, joists, boards,
and materials on lot number fourteen in block number seventeen
in the original town of Aurora, Nebraska, at the commencement
of this action, and of the value of $350, and being the same chat-
tels and personal property mentioned and described in the orig-
inal petition filed in this cause, which petition is hereby made a
part hereof." *Held*, Not to set forth a different cause of action.

2. **Real Estate:** ANNEXATION TO THE FREEHOLD. As to whether
a building constructed upon the land of a person other than the
owner of the building becomes annexed to and a part of the free-
hold, must depend to a great extent upon the facts and circum-
stances of the case, and the intention of the parties.

3. ———: ———. The owner of real estate offered it for sale, then
put it into the hands of an agent for sale at a fixed price. The
agent sold it for the price named. The purchaser, without a
written contract or the payment of any money, took possession
of the property pending the execution of the deed, and began
the erection of a house thereon for himself. The owner of the
real estate afterwards repudiated the sale of the land, and took
possession of the building constructed by the purchaser. *Held*,
That the purchaser was not divested of his title to the building,
he being in no default, and having constructed the building in
good faith, and that he could maintain replevin therefor.

4. **Damages Excessive:** MUST AFFIRMATIVELY APPEAR SO TO
BE. A judgment for damages will not be set aside simply be-
cause the damages allowed appear to be high, if there is any
evidence to support the finding of the jury. Especially so when
the verdict does not appear to have been the result of passion or
prejudice.

ERROR to the district court for Hamilton county. Tried
below before NORVAL, J. The verdict of the jury found

the right of possession of the property in dispute to be in the defendant in error, and awarded him $50 damages.

*Alfred W. Agee* and *Austin J. Rittenhouse,* for plaintiff in error.

Building was part of freehold. 1 Washburn on Real Property, §§ 5-7 and 148. *Crest v. Jack,* 27 Am. Dec., 353, and cases cited. *Lunquist v. Teneyck,* 40 Iowa, 219. *Huebschmann v. McHenry,* 29 Wis., 655. *Warner v. Fountain,* 28 Id., 405. *W. U. Tel. Co. v. Ry. Co.,* 11 Fed. Rep., 7. *Stillman v. Flinker,* 10 N. W. Rep., 842. *Ewell on Fixtures,* 57. *Seymore v. Watson,* 5 Blackf., 555. *Boon v. Orr,* 4 G. Green, 304. *Smith v. Carrol,* Id., 146. *Kimball v. Adams,* 52 Wis., 554. *Lipsky v. Borgman,* Id., 256. Silence on part of Waters not sufficient to raise presumption of agreement or assent on his part. *Crest v. Jackson, supra. Marsh v. Weckerly,* 13 Pa. St., 252. *Knouff v. Thompson,* 16 Id., 364. *Hill v. Epley,* 31 Id., 334. *Rogers v. Walker,* 6 Id., 374. *Glidden v. Strupler,* 52 Id., 404. Note to 19 Am. Dec., 626. Farley's duty was simply to find purchaser. His action did not bind Waters. *Mathews v. Sowle,* 12 Neb., 398. 16 Cent. Law Journal, 442.

*Hainer & Kellogg* and *P. Likes,* for defendant in error, on annexation to freehold, cited: *King v. Otley,* 1 B. & A., 161. *Wansbrough v. Maton,* 4 Ad., 884. *Wheeler v. Bedell,* 40 Mich., 693. *Tifft v. Horton,* 53 N. Y., 377. *Rush County v. Stubbs,* 25 Kan., 322. *Mills v. Redick,* 1 Neb., 437. *Freeman v. Lynch,* 8 Neb., 200.

REESE, J.

This was an action of replevin instituted in the county court of Hamilton county, wherein the defendant in error claimed the possession of "one frame building now in

process of erection, size 22x50, with the appurtenances thereto belonging, and of the value of $350." An order of replevin was issued, but the appraised value of the property being more than $500, the cause was certified to the district court without further proceedings. In the district court the defendant in error filed his petition, in which the property in controversy was described as "all the lumber, laths, shingles, nails, joists, boards, and materials on lot number fourteen, in block number seventeen, in the original town of Aurora, Nebraska, at the commencement of this action, and of the value of $350, and being the same chattels and personal property mentioned and described in the original petition filed in this cause, which petition is hereby made a part hereof." The plaintiff in error moved to strike this petition from the files for the reasons that it set forth a new and different cause of action and did not describe the same property as that described in the bill of particulars in the county court. This motion was overruled, and the ruling of the court thereon is now assigned for error.

Without entering into any discussion of the rules of pleading and practice involved in this question, we shall be content to refer to the case of *School District No. 36 in York County v. McIntie*, 14 Neb., 46, and adopt the conclusions there reached. 1st, That there is no such departure as would warrant the court in sustaining the motion to strike; and 2d, The subsequent filing of an answer and joining issue on this pleading is a waiver of the error if any had existed.

Upon issue joined, the cause was tried to a jury, who returned a verdict in favor of the defendant in error upon the question of the right of property and of possession, and assessed his damages at $50. A motion for a new trial was made by the plaintiff in error, which was overruled and judgment entered thereon.

The next and most important question in this case is as

to the right of the defendant in error to maintain this action, it being claimed by the plaintiff in error that the building in question was annexed to the freehold and was not a subject of replevin.    Before entering upon an examination of this branch of the case, it seems proper to say that the evidence was to a great extent conflicting.    The cause being tried to a jury, it was for them to determine the weight of the testimony, and with their conclusion in that respect we must be content.    Again, as to whether or not the building in dispute *did* become annexed to and a part of the freehold must depend to a very great extent upon the facts of the case and the intention of the parties.

In order to understand the exact point involved, a brief statement of the material facts, as disclosed by the record, is necessary, and which are substantially as follows:    Prior to and during the month of March, 1882, the plaintiff in error was the owner of lot 14, block 17, in the town of Aurora.    About the first of March of that year the plaintiff in error and the defendant in error had some conversation upon the subject of the purchase of the lot by the defendant in error.    The price asked by the plaintiff in error was $450.    About the twentieth of March the plaintiff in error left Aurora for Dakota territory, but before leaving he placed the lot in the hands of W. I. Farley, a real estate agent, for sale, and fixed the price at $500, making no reservations or conditions as to whom the lot should be sold. The defendant in error testifies that he purchased the lot of the agent, and the proof on the trial would fully warrant the jury in so deciding.    The lot was surveyed and the corner established so that the carpenters might proceed with the work of constructing the building thereon.    The surveyor testified in substance that the defendant in error called upon him to make the survey and locate the corners.    He and the defendant in error "stepped into Farley's office to ascertain the numbers, and Reuber asked Mr. Farley if it was all right for him to go ahead and survey that, as he wanted to

fix the corners before going on and building. Mr. Farley said I have no doubt that it is all right, that the lot was left with them for sale at the price he gave. He said it was all right of course. Farley told Mr. Reuber to let me do the work." The witness further testified that he did the surveying immediately after and the carpenters were there at work. On the cross-examination he virtually reiterated his testimony in chief, saying, "Reuber said he was already to go ahead on that building on that lot, and wanted to know if it was all right. Mr. Farley said certainly that it was all right, from the fact that the property was left there for sale and not withdrawn. That there would be no difficulty as to that, that there would be no question but that Reuber would get the lot." He also testified that Farley said Reuber would be safe in going on and building on the lot. That the lot had been left with him to sell and it would be safe for Reuber to go on. It is conceded that Farley was the agent of the plaintiff in error and had authority to sell the lot. Under these circumstances the defendant in error took possession of the lot and began the construction of the building in dispute. Farley soon afterwards informed him that he (Farley) had no word from the plaintiff in error, and he did not know how about his getting the lot, and it was best for the defendant in error not to go ahead until he could reach the plaintiff in error; he did not know where he was, and he would not guarantee it, but that the defendant in error said he knew it would be all right, that plaintiff in error had offered to sell him the lot before. The defendant in error proceeded with the construction of his building, placing it on stones so laid under the sills as to afford a level and substantial resting place, but in no other way attaching it to the soil. In the latter part of April, 1882, the plaintiff in error returned home from Dakota. The frame of the building had been put up, part of the roof, siding, joists, and flooring had been put on, but the building had

not been inclosed.    The defendant in error had evidently acted in good faith, fully believing he had purchased the lot and would receive his deed upon the return of the plaintiff in error.    In this he was mistaken.    The plaintiff in error not only refused to make the deed, but notified the defendant in error that he must stop work and leave the building, that it was his, and that the defendant in error must let it remain there.    The defendant in error tried the expedient of removing the house during the night time, but the plaintiff in error appeared and forbade the removal.    The replevin was then sued out by the defendant in error.

The first point made by the plaintiff in error is, that "Where one person enters upon the land of another, and without the assent and agreement of the land-owner erects thereon a building it at once becomes a part of the freehold, and belongs to the owner of the soil."    The long array of authorities cited in support of this proposition would, perhaps, deter us from questioning its soundness, were we ever so strongly inclined to do so; but in our view of the case it has no application here.    But see *Dietrichs v. The L. & N. W. R. R. Co.*, 13 Neb., 47.    It is also urged that if the plaintiff in error had been present and known of the erection of the building his mere silence would not have been sufficient to raise a presumption of any assent or agreement on his part.    It is not necessary for us to discuss this question either, for he, through his agent, was more than silent.    The lot was to all intents and purposes sold to the defendant in error.    His entry thereon was not wrongful.    He was exercising the right which he had to use his property as he saw fit.    Had he so elected, he could have removed his building at any time before the efforts of the plaintiff in error to become its owner, and he would not have been in any degree liable to the plaintiff in error for the value thereof.

In *Little v. Willford*, 17 N. W. Rep., 282, the owner of

the land executed to parties named in the deed a convey-
ance, the land conveyed to be held by them as trustees for
a church named in the deed. The association, which was
represented by the trustees, took possession of the land and
erected a church building thereon. It was afterwards as-
certained that the deed was void and conveyed no title.
The church association directed the removal of the church
to another site, and the defendants were proceeding to sever
and remove it when they were enjoined by the plaintiff
Little. It was held that he had no right to the church,
and the injunction was dissolved, and Vanderburgh, J., in
writing the opinion of the court, says: "As to the plain-
tiff's rights to the improvements, the defendant's equities
are not less strong than they would have been had plaintiff
expressly licensed the society to erect a church upon the lot
in question. Where the authority of placing a building
upon the land of another rests upon his license, and the
consideration of the case is uninfluenced by the unreasona-
ble laches of the licensee, or other special circumstances, he
is regarded as continuing to be the owner of the building
and equitably entitled to remove the same if he elects, and
if such removal be practicable and works no serious injury
to the land or the premises of the licensor to which it is
annexed." (See authorities there cited.)

The authorities all distinguish between an unauthorized
erection of buildings upon the land of another, and im-
provements made thereon by his consent, as respects the
title to the improvements or the beneficial interest therein.
Tyler on Fixt., 88, 81. Suppose the contract of sale and
authority to take possession and construct the building,
pending the completion of the contract, had been made by
the plaintiff in error and he had afterwards refused to ex-
ecute and deliver the necessary deeds, would the case have
been materially different from what it is? We think not.
The right to remove buildings under such circumstances is
strictly equitable in its nature, but as between the parties

it has come to be recognized at law. *Little v. Willford, supra.* 2 Am. Leading Cases (5 Ed.), 589.

. The case of *Rush County v. Stubbs,* 25 Kas., 322, is quite similar to this in many respects. There the plaintiff placed its building upon the land of the defendant, upon which he had a homestead filing, with the understanding that he should convey to the plaintiff when he procured his patent from the United States. The building was placed upon a permanent stone foundation, but the agreement with Stubbs was not in writing. Stubbs obtained his patent to the land but refused to convey to the county, and also refused to allow the plaintiff to remove the house. The county replevied the house, and the supreme court decided the action could be maintained. Brewer, J., in delivering the opinion of the court, used the following language: "The house was placed by the plaintiff upon the land to which the defendant Stubbs had an inchoate title, with the understanding that it should remain the property of the plaintiff. How did the plaintiff lose its title? The manner in which it was annexed to the ground did not prevent the intention of the parties from remaining effective. The building was, it is true, on a stone foundation, but it was held there by its own weight. That it could be moved without destruction is evident, not merely from the description of the building but also from the fact that it had been once moved.

"The contract of purchase may be laid out of consideration, for it was void and was repudiated by the owner of the realty, and it was not intended thereby to affect the ownership of the building. * * * The intention of the parties made this building personalty, and neither the manner of annexation nor any other matter prevented this intention from being carried into effect. Demand was conceded. Replevin and not forcible entry and detainer is the remedy to recover personal property."

The act of the agent when acting within the scope of his

authority is the act of the principal. Farley was authorized by the plaintiff in error to sell the lot. The authority to sell carried with it the right to put the purchaser in possession. He sold the property to the defendant in error, who, relying on his purchase, made the improvement thereon *for himself.* The plaintiff in error had not invested a dollar thereon, and to say that he could repudiate the contract made by his authorized agent, and by his repudiation become vested with the title to the property of the defendant in error, is a proposition too monstrous to be entertained by a court of justice.

The plaintiff in error contends that the court erred in giving the first and second instructions asked by the defendant in error. On this proposition it is enough to say, that the instructions complained of were in the line of reasoning presented herein. They fairly submitted the case to the jury, and were correct.

It is next claimed the damages assessed by the jury are excessive, and were given under the influence of passion and prejudice. While the damages found by the jury are perhaps higher than would have been given by the writer hereof, yet there is some testimony from which the jury might have arrived at their conclusion, and the amount is not great enough to suggest passion or prejudice on the part of the jury. There is no error sufficient to reverse the case on that ground.

After a careful examination of the whole case we are driven to the conclusion that substantial justice has been done and that there are no errors prejudicial to the plaintiff in error. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.