I. TANENBAUM SON & COMPANY, Respondent, *v.* C. LUDWIG BAUMANN & COMPANY, Appellant.

(Argued November 22, 1932; decided January 27, 1933.)

*Edward S. Greenbaum* and *Jonas J. Shapiro* for appellant. The subject-matter of the action is not personalty, and replevin does not lie. (*Scharfman* v. *May-Claire Costume Co.*, 133 Misc. Rep. 482; *Roach* v. *Curtis*, 50 Misc. Rep. 122; 115 App. Div. 765; 191 N. Y. 387; *Fryatt* v. *Sullivan Co.*, 5 Hill, 116; 7 Hill, 529; *Cresson* v. *Stout*, 17 Johns. 116; *Automatic Sprinkler Corp.* v. *Rosen*, 259 Mass. 319; *U. S. Construction Co.* v. *Hamilton Nat. Bank*, 73. Ind. App. 149; *Madfes* v. *Beverly Development Corp.*, 251 N. Y. 12; *East N. Y. El. Co.* v. *Petmaland Realty Co.*, 243 N. Y. 477; *DeBevoise* v. *Maple Ave. Const.*,

Co., 228 N. Y. 496; *Tifft* v. *Horton,* 53 N. Y. 377; *Ford* v. *Cobb,* 20 N. Y. 344; *Voorhees* v. *McGinnis,* 48 N. Y. 278; *Gould* v. *Springer,* 206 N. Y. 641.) The trial court erred in valuing the equipment as an installed system instead of valuing it as equipment removed from the premises. (*Reno* v. *Bull,* 226 N. Y. 546; *Allen* v. *Fox,* 51 N. Y. 562; *Boston Chamber of Commerce* v. *Boston,* 217 U. S. 187; *Johnston* v. *Albany Dry Goods Co.,* 12 App. Div. 608; *Moore* v. *Wood,* 12 Abb. Pr. 393; *Pennybecker* v. *McDouglas,* 48 Cal. 160; *Gosliner* v. *Briones,* 187 Cal. 557; *Matter of City of New York* [*Manhattan Ry. Co.*], 229 App. Div. 617.) The trial court erroneously included moneys expended for work, labor and services. (*Roth* v. *Felt,* 60 Misc. Rep. 116.)

*Charles A. Houston* and *Mayer L. Halff* for respondent. The property, by agreement, retains its character as personalty, especially as it can be removed without substantial injury to the freehold and without destruction of the property. (*Tifft* v. *Horton,* 53 N. Y. 377; *Duntz* v. *Granger Brewing Co.,* 41 Misc. Rep. 177; 96 App. Div. 631; 184 N. Y. 595; *Davis* v. *Bliss,* 187 N. Y. 77; *Fitzgibbons Boiler Co.* v. *Manhasset Realty Co.,* 198 N. Y. 517; *Madfes* v. *Beverly Development Corp.,* 251 N. Y. 12.) The value of the property, according to statute, must be fixed as of the time of the trial; to measure the value as though the sprinkler system had been actually removed while as a matter of fact it remains a working system would be tantamount to giving the system to the defendant, a wrongdoer, for nothing. (Civ. Prac. Act, § 1120; *Suydam* v. *Jenkins,* 3 Sandf. 614; *Silsbury* v. *McCoon,* 3 N. Y. 379; *Worrall* v. *Munn,* 53 N. Y. 185; *Allen* v. *Fox,* 51 N. Y. 562.) The item of money, representing labor expended in the erection of the sprinkler system, was properly considered in estimating its present value. (*Starkey* v. *Kelly,* 50 N. Y. 676.)

LEHMAN, J. The plaintiff installed a sprinkler system in premises, which were leased to the Brooklyn Furniture Company, under a contract made with that company and with the consent of the landlord. The contract provided that title should remain in the plaintiff and at the termination of the contract or breach or repudiation thereof by the Brooklyn Furniture Company, the plaintiff might, at its own cost and expense, enter upon the premises and remove any or all of the equipment. Though the sprinkler system remained the personal property of the plaintiff, its rights were qualified by the necessity of an actual severance of the chattels and their removal from the real property before it could obtain exclusive possession thereof. So long as the contract continued in existence the plaintiff obtained the benefit of the use of the sprinkler system in connection with those premises. Under the terms of the contract any reduction in the insurance rates upon the property of the Brooklyn Furniture Company, through the protection afforded to the premises by the sprinkler system, inured to the benefit of the plaintiff. The defendant thereafter entered into possession of the premises and purchased and acquired all of the assets of the Brooklyn Furniture Company with notice that the plaintiff had title to the equipment. Then the plaintiff demanded possession of the sprinkler system, and upon the refusal of that demand brought this replevin action. Final judgment was entered in favor of the plaintiff awarding to it possession of the chattels, recovered by it, with its damages and also awarding to the plaintiff the sum fixed as the value of the chattels to be paid to the plaintiff if possession is not delivered to it. The value of the chattels was fixed at the sum of $8,000. The evidence shows that this amount represents the value of the sprinkler system as a whole when affixed to and used in connection with the premises in the possession of the defendant. After removal of the sprinkler system from

the premises its value would be much less. Thus, if possession is not delivered to the plaintiff and the defendant is compelled to pay to the plaintiff the amount contingently awarded against the defendant, the plaintiff will be in a much better position than if the defendant had complied with the plaintiff's demand and permitted the plaintiff to remove the sprinkler system.

If any person had wrongfully taken the chattels from the premises while the contract was still in force, the wrongdoer would have interfered not only with the plaintiff's right to remove the chattels at the termination of the lease, but also with the plaintiff's right to enjoy the benefit of the chattels while affixed to the real estate. For damages caused to the plaintiff by such wrong, the plaintiff would have had a right of action against the wrongdoer. The measure of damages would then have been the value of the chattels at the time when affixed to the real property. Those damages could not be measured by the market price which could be obtained for the chattels in a dismembered state when removed from the real property, for such measure would represent merely the gain of the defendant caused by its wrongdoing and not the loss of the plaintiff. The plaintiff's loss could be measured only by the value of the chattels in the place where the plaintiff had a right to maintain them and from which they were removed. Obviously there could be no market price for a sprinkler system in such position. There the value of the property would be estimated with reference to the most remunerative use by the owner, for which it is adapted. (1 Sedgwick on Damages, § 252; 4 Sutherland on Damages [4th ed.], § 1117; *Washington Ice Co.* v. *Webster*, 68 Me. 449; *Stickney* v. *Allen*, 10 Gray, 352.)

In such case the real wrong consists in the severance of the chattels and the only reasonable measure of damages must be the value of the property before severance. It is the possession of the plaintiff and not merely its right of

possession which has been invaded. That rule has been applied in England where the action was brought in trespass. (*Moore* v. *Drinkwater*, 1 F. & F. 134; *McGregor* v. *High*, 21 L. T. Rep. 803; *Thompson* v. *Pettit*, 11 Jur. 748.) It has been applied in this State where carpets were wrongfully removed from a house occupied by the owner of the carpets. (*Starkey* v. *Kelly*, 50 N. Y. 676.) That rule has no application in this case.

It has no application because the defendant's wrong consisted, not in severing and removing chattels from the place where they were affixed, but merely in refusing to allow the plaintiff to take possession of the property for the purpose of removal. For that purpose they must be severed by the plaintiff from the realty. " In an action for the unlawful taking and conversion of a quantity of household goods, including carpets, upon the question of damages as to the latter, a charge was approved which directed the jury to inquire what would be the value * * * of the labor in cutting, making and putting them down " (citing *Starkey* v. *Kelly*, 50 N. Y. 676), " but when the property so in place can no longer be there used by the owner and he is subject to summary removal its value will be estimated in case of conversion with reference to these facts; it will be estimated with reference to * * * the obligation or necessity of removal." (4 Sutherland on Damages [4th ed.], § 1114, citing *Moore* v. *Wood*, 12 Abb. Pr. 393.) That distinction applies with peculiar force in this case. By transferring possession of the premises to this defendant, the Brooklyn Furniture Company breached its contract with the plaintiff. The plaintiff sued the Brooklyn Furniture Company for the damages caused by that breach and recovered a judgment for stipulated damages of $1,000 a year for each year during the term of the contract between it and the Brooklyn Furniture Company. These damages necessarily included the benefit which the plaintiff would have derived during that term from the use of the sprinkler system through

reduction of the insurance rate on the property of the occupant of the premises. Though title to the sprinkler system still remained in the plaintiff and the plaintiff might maintain a replevin action against the Brooklyn Furniture Company or any other person, standing in the same position, who thereafter wrongfully detained the plaintiff's property, an award fixing the value of the chattels as measured by their use as a sprinkler system would result *pro tanto* in double compensation to the plaintiff and a double liability on the part of the Brooklyn Furniture Company and any other wrongdoer. The defendant occupies the same position under the agreement that the Brooklyn Furniture Company would occupy if defendant, and the rights of the plaintiff as against this defendant are neither greater nor less than its rights would be if the Brooklyn Furniture Company were the defendant.

The measure of the value of the chattel when affixed to the real property does not apply for the further reason that the action of replevin, like the old action of trover, is founded not upon a claim that there is a wrongful taking of, or antecedent interference with, the plaintiff's title or right of possession, but solely upon the claim that the defendant wrongfully withholds the property. " The whole had been placed in the building by the voluntary act of the appellee, and though they remained his property, it is clear that he could not have the right to possess them, except in the condition they would be in when severed. If he had instituted replevin to recover them, or if the appellant had permitted him to take them, he could possess them only as they would be when severed and removed from the building. It follows that the only measure of damages to which he is entitled, is the value of the articles when so severed, and the jury ought to have been so instructed." (*Walker* v. *Schindel*, 58 Md. 360, citing Ewell on Fixtures, 441.) It is anomalous to base the right to maintain an action for a chattel upon a constructive severance of the chattel from the real

property or a right to remove the chattel from the real property and at the same time to give to the chattel a special value which it would have only if it remained on the real property. (Cf. *Pennybecker* v. *McDougal*, 48 Cal. 160.) " In the case of fixtures, however, the mode of valuation may differ materially, according to the form in which the action is brought. In trover, as we have seen, the plaintiff can only recover their value as chattels. But in trespass their actual value as fixtures may be given." (Mayne on Damages [10th ed.], 399, 400.)

Apparently all the members of the court are agreed that these principles would ordinarily determine the measure of the value of a chattel, but a distinction is urged, based on some vague theory of justice such as is embodied in the doctrine that a wrongdoer may not profit by his own wrong. The final judgment is enforcible by execution and " where the judgment awards a sum of money, if possession of the chattel is not delivered to the prevailing party, the execution must require the sheriff, if the chattel cannot be found within his county, to satisfy the sum so awarded * * * out of the property of the party against whom the judgment is rendered." (Civ. Pr. Act, § 1126.) If the chattel can be found within the county then the sheriff " *must* replevy it forthwith by taking it into his possession " (Civ. Pr. Act, § 1100), at least if the plaintiff furnishes the required undertaking. The defendant is not given the option of delivering the chattel or paying the award. The plaintiff is entitled to the possession of the chattel if the sheriff can find it in the county and take it into his possession. Only if the defendant can successfully obstruct the plaintiff or the sheriff in taking the chattel into his possession would the plaintiff be entitled to enforce the contingent award of its value, but we are told that in such event, however improbable, the plaintiff should receive the value of the chattels as measured by the most profitable use to which the defendant could put them. That was the

situation also in the cases above cited. The owner in each case was entitled to the possession of a chattel detached from real property and removed from that property. The judgment awards the owner possession of that chattel only, and the value fixed by the jury is the value of that chattel and nothing else. In this case we have, in addition, the fact that the plaintiff has already recovered a judgment in an action against the Brooklyn Furniture Company which includes damages for deprivation of any right it may have had to maintain the chattels in the position in which they were at the time of the plaintiff's demand as well as at the time of the trial.

The doctrine that a wrongdoer may not profit by his wrong has been applied where the wrongdoer's profits might have been enjoyed by the plaintiff except for such wrong. In *Allen* v. *Fox* (51 N. Y. 562) the court referred to a rule of damages which worked out that result. There the plaintiff in a replevin action obtained possession of a horse which the defendant claimed belonged to him, and retained that possession for a year and three months until the trial of the action. At the trial the jury found the title to the horse to be in the defendant and assessed its value at $175 and damages for its detention by the plaintiff at $75. The value of the horse was, of course, fixed at the time of the trial. The horse may have and probably did depreciate in value while detained and used by the plaintiff. The court held that six per.cent on the value of the horse did not measure the loss suffered by the defendant during the period of its detention by the plaintiff. By the wrongful detention of the plaintiff, the defendant had been deprived of the usable value of the horse and that constituted the measure of damages which the court held should be applied. Again in *Suydam* v. *Jenkins* (3 Sandf. 614) the court said that the value of a chattel which is wrongfully detained includes the profits which the wrongdoer has obtained by the sale of the chattel, or has in his power to obtain by a sale

thereafter; for the same profits which the wrongdoer has realized or can realize could have been obtained by the plaintiff but for the wrong for which the plaintiff is entitled to damages. A careful search has disclosed no case in which the rule that a wrongdoer may not profit by his own wrong has been applied where such profits have no relation to the value of the chattel to the plaintiff or to the profits which the plaintiff might have obtained if the plaintiff had not wrongfully been deprived of title and possession to the chattels.

It is said that courts of other jurisdictions have adopted the principle applied by the trial court in this case. (*Blake-McFall Co.* v. *Wilson*, 98 Ore. 626; *Smyth* v. *Stoddard*, 203 Ill. 424.) Those cases present, however, a different problem. There title to chattels affixed to real property passed as fixtures to a purchaser for value of the real property, though they were installed under an agreement with a previous owner of the property that title should remain in the plaintiff. As between the plaintiffs and the previous owners there was a conversion of the chattels when they were sold as part of the real estate. The plaintiffs had no remedy against the purchasers, and could not bring actions for replevin. They sued the previous owners in conversion for the value of the chattels at the time of such sale. Though for the purposes of the conversion action the chattels were personal property, the owners of the real property in converting those chattels had obtained their value as real property through an increase of the purchase price of the real property to which they were annexed. Otherwise the plaintiffs might have sold the fixtures to the purchaser of the real property at the same price. In principle, the cases are not different from one where value is shown by an actual sale instead of by market value, and the owner was deprived of an opportunity to use his chattels in the manner most profitable to him. That is a very different situation from the one presented here, where the plaintiff has brought

an action to compel the delivery of chattels but claims a value for those chattels which the chattels could not have by reason of any use to which the plaintiff could put them if actually delivered to it.

It follows that the judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CRANE, J. (concurring). The difference between the two opinions in this case appears to rest upon the determination of who has the right to take or keep physical possession of the property. Can the plaintiff insist that the sheriff seize the sprinkler system and remove it even if the defendant resists or is willing to pay the assessed value, or, on the other hand, does a choice exist in the defendant to let the property go, or keep it and pay the assessed value? If the latter alternative is the law, then the injustice of Judge LEHMAN's result readily appears. Fixing the value of the system as removed reduces it to junk or to little value. Should the defendant be given the privilege to pay this small amount or detached value and keep the property as installed? He would thus profit by his own wrong, reaping the benefit of the labor entering into installation when only paying for the material.

However, on the other hand, if this action of replevin be solely a possessory action then the election of what to do rests with the plaintiff, not the defendant. The plaintiff can insist upon taking the property over all obstructions and objections raised by the defendant and may refuse the offer of the defendant to pay the assessed value. If he wants his property he can have it. The law then would fix the value as a chattel severed from the realty. In other words, the value which a judgment fixes is to be recovered or resorted to as a substitute for the property only when the property *cannot* be given to the plaintiff; it is not a substitute for the property merely

because the defendant *will not* give it up. If this were not the meaning of sections 1124 and 1126 of the Civil Practice Act every action in replevin might take the form and become an action for conversion without the benefit of the rule of damage applicable to conversion.

There must be a remedy at law for the recovery of the actual possession of property when the owner desires it; forced sales cannot be accomplished through wrongful possession culminating in conversion. Let me illustrate. I may have a famous painting which has a commercial value, but which to me is worth much more than the money because of association and family connections. Having loaned this to another, as for instance, an art exhibitor, he refuses to return it. Can he keep it by electing to pay the commercial value as fixed by the judgment of the court in the action of replevin, under section 1124 of the Civil Practice Act? Certainly not. I may insist upon getting my picture back and demand that the sheriff seize it if it be in existence and capable of being repossessed. Nothing but destruction or lack of jurisdiction would amount to an obstacle to the sheriff's authority.

These questions seldom have arisen and, I take it, seldom will arise, as in most of the cases of replevin the value, when fixed, is a sum which the plaintiff is willing to accept if the defendant desires to keep the property. Such no doubt is the result in all the conditional bill of sale cases and matters of commercial transaction or bargain and sale. However, then the acceptance of the money in place of the property is by agreement or the consent of the parties and not by the judgment of the court in replevin.

For these reasons I concur in the result reached in Judge LEHMAN's opinion. The plaintiff is entitled to get his sprinkler system. He has been given the right to possess it and the value therefor is fixed as a chattel severed from the realty which will be given to him when

he cannot obtain possession or retake it. The defendant has no election to keep the property and pay its value. If he could do this he then should pay the value of the property as a fixture or one installed upon the property, in other words, the cost of installing it.

HUBBS, J. (dissenting). This is a replevin action in which the plaintiff has been awarded possession of a sprinkler system of the value of $8,000 together with damages amounting to $948.67 and costs and disbursements amounting to $162.35, or in the event that possession is not delivered to the plaintiff, the sum of $9,111.02.

The sprinkler system was installed by the plaintiff, an insurance broker, in buildings in the possession of the Brooklyn Furniture Company. The contract provided that title should remain in the plaintiff and that at the termination of the contract or breach or repudiation thereof by the Brooklyn Furniture Company, the plaintiff might, at its own cost and expense, enter upon the premises and remove any or all of the equipment.

The furniture company was a tenant of the building under a lease which would expire in 1946. The landlord consented in writing to the agreement under which the sprinkler system was installed.

The defendant entered into possession of the premises and purchased and acquired all of the assets of the Brooklyn Furniture Company. Prior thereto, defendant was informed of plaintiff's title to the equipment. At the trial it was agreed that the defendant occupied the same position under the agreement that the furniture company would occupy if defendant.

Before the commencement of the action the plaintiff demanded possession of the sprinkler equipment, which demand was refused. Thereupon this action was brought to recover the possession of the equipment or its value,

alleged to be $11,500, with damages for detention and costs and disbursements of the action. The action was tried before the court, a jury having been waived. It found the value of the sprinkler system at the time of the trial to be $8,000. There is evidence to support such finding, which has been unanimously affirmed by the Appellate Division.

The contract provided that the sprinkler equipment should retain its character as personal property. Such a contract was valid between the parties and fixed the character of the equipment after it was installed. The general rule is that where the contract of sale of personal property which is to be attached to real property evinces conclusively the intent that it shall remain personal property until it is paid for, the intent may control the result which would ordinarily flow from the manner in which the personal property is attached to the real property.

The contract in question clearly evinces an intent that the sprinkler system should remain personal property. Moreover, there is testimony from which a finding could be made that the sprinkler system could be moved without loss of support to the building.

The trial court was justified in deciding that the sprinkler equipment retained its character as personal property. (Pers. Prop. Law, § 67; *Brearley* v. *Cox*, 24 N. J. L. 287; *Ford* v. *Rowe*, 195 Mass. 216; *Detroit Steel Cooperage Co.* v. *Sistersville Brewing Co.*, 233 U. S. 712, 716; *Gill* v. *DeArmant*, 90 Mich. 425; *Atlantic Realty Co.* v. *Wlodar*, 119 App. Div. 850; *Madfes* v. *Beverly Development Corp.*, 251 N. Y. 12; *Goldberg & Sons, Inc.*, v. *Weisberg-Goldman Corp.*, 260 N. Y. 690.) Being personal property, an action of replevin lies. (*Harris Bros.* v. *Nichols*, 247 Mich. 89; *Brearley* v. *Cox*, *supra;* cf. 26 C. J. 736, where many cases are collated in a note.

The principal contention of appellant is that the trial court committed reversible error in fixing the value of

the property involved. The evidence was undisputed that the equipment if taken out of the building would be practically worthless; that it would cost as much to take it out as it would be worth when out. It was urged by appellant that the value of the system at the time of the trial should have been fixed at a mere nominal sum.

In approaching the solution of the question presented for determination, it is well to have in mind just what the plaintiff claimed and what the court found.

The complaint alleged that the equipment was personal property by reason of the terms of the contract; that plaintiff had a right to the possession of the same; that defendant was in possession thereof and refused to surrender possession to plaintiff after demand. All those facts were found in favor of the plaintiff. The judgment awarded possession to the plaintiff and fixed the value of the equipment at $8,000. The judgment after awarding possession of the chattels to plaintiff and fixing their value, provided " or in the event that possession of the aforementioned chattels is not delivered to the plaintiff herein, the plaintiff * * * recover from the defendant * * * the sum of $8,000.00, the value " thereof. Briefly, the judgment is that defendant wrongfully had possession; that plaintiff is entitled to possession or in the alternative to $8,000, the value of the chattels. Under the judgment the plaintiff is entitled to retake the chattels, or if it cannot retake them it is entitled to recover from the defendant $8,000, their value. If the defendant desires to purge itself of the wrong which it has committed in refusing to permit the plaintiff to retake its property, all that it has to do is to obey the judgment of the court and say to the defendant " take your property." Under the judgment, the defendant is not bound to deliver the equipment taken apart and put outside of the buildings. It did not place it in the buildings. It found it in the buildings when it took over the lease. ( *Nimon* v. *Reed*, 79 Iowa, 524.)

Boldly stated, its contention is that it may refuse to obey the judgment, wrongfully prevent the plaintiff from taking its property, appropriate it to its own use and escape all liability to the plaintiff for its value except for a nominal sum, that is, what the materials in the system would be worth after removal, less the expense of removal. Manifestly there is something wrong with such contention.

" A rule of damage [value] which works out such a result cannot have a basis of principle or justice to stand upon." (*Allen* v. *Fox*, 51 N. Y. 562, 566.)

In an action of replevin under the English common law, the only relief which a plaintiff could obtain was a judgment awarding the possession of the property.

In our country the action has gone through a process of evolution by reason of statutory enactments, in most if not all of the States. In this jurisdiction the action may be maintained whenever (with exceptions not material here) personal property of a party has been wrongfully taken from his possession or wrongfully withheld and the judgment in such action must be in the alternative awarding possession to the party found to be entitled thereto or in the event that possession cannot be obtained by the successful party, then that the prevailing party recover the value of the property to be fixed by the judgment. (Civ. Pr. Act, § 1124.)

The judgment in the case at bar so provides. It is only in the event that plaintiff cannot obtain delivery of the property in satisfaction of the judgment that it may recover its value as fixed in the judgment.

The value of the property must be fixed " at the time of the trial." That is the command of the statute, Civil Practice Act, section 1120. Its value at that time was its value as a sprinkler system, not as junk out on the sidewalk. The owner of the building is not a party to this action.

The same measure of value applies in this action where

the defendant retains possession of the chattels, as would apply in an action where a plaintiff had replevied chattels and taken possession thereof and defendant sought a judgment for the return of the chattels or a judgment for their value. (Civ. Pr. Act, § 1119; 2 Sedgwick on Damages [8th ed.], § 529.)

If a defendant desires to retake chattels which have been replevied by a plaintiff, he must deliver to the sheriff an affidavit stating the value of the chattels and deliver an undertaking for twice their value as stated in the affidavit. (Civ. Pr. Act, § 1103.)

It would seem that the value to be stated in such affidavit should be the actual value of the chattels as they are at the time of making the affidavit.

Undoubtedly the general rule for measuring the value of the chattels sought to be recovered in a replevin action is the value of the chattels to the plaintiff. The rule is not inflexible, and courts will not permit an injustice to be done in order to follow a general rule, but will vary the rule in order to work out justice in extraordinary and unusual cases. Strict adherence to the general rule in this case would enable the defendant, a wrongdoer, to profit by a measure of value favorable to itself and unfair to the plaintiff. The defendant would be permitted to profit by its own wrong, in violation of a general principle involved in the law of damages. (*Allen* v. *Fox, supra.*)

We believe that the measure of value applicable under the facts of this case was stated by Judge DUER in *Suydam* v. *Jenkins* (3 Sandf. 614, 624): " Even where the market value of the property, when the right of action accrued, would more than suffice to indemnify the owner, it is not in all cases, that the liability of the wrongdoer should be limited to that amount. It is for the value that he has himself realized, or might realize, that he is bound to account, and for which judgment should be rendered against him. Hence should it appear in evidence upon the trial, that he had in fact obtained upon a sale of the

property a larger price than its value when he acquired the possession, or that he still retained the possession, and that an advanced price could then be obtained, in each case the increase upon the original value, (which otherwise would remain as a profit in his hands), ought to be allowed as cumulative damages.

" We think it follows from the observations that have been made, and the illustrations that have been given, that the principles which we have stated as those which ought to determine the amount of the judgment, will be carried into effect in all cases by adding to the value of the property when the right of action accrued such damages as shall cover, not only every additional loss which the owner has sustained, but every increase of value which the wrongdoer has obtained or has it in his power to obtain; and we are satisfied, after much consideration, that there is no other mode of computation by which as a universal and invariable rule the same result can be obtained."

Courts of other jurisdictions have adopted the principle applied by the trial court in this case. (*Blake-McFall Co.* v. *Wilson*, 98 Ore. 626; *Smyth* v. *Stoddard*, 203 Ill. 424.)

The judgment should be affirmed, with costs.

POUND, Ch. J., KELLOGG and CROUCH, J., concur with LEHMAN, J.; CRANE, J., concurs in separate opinion; HUBBS, J., dissents in opinion in which O'BRIEN, J., concurs.

Judgments reversed, etc.